In the Matter of Application of JAMES YOUNG
for Admission to Practice Law Before the
Courts of the State of Nevada.

No. 3384

January 20, 1943.                                      132 P. (2d) 1052.

*James Young,* Petitioner, of Las Vegas, in pro. per.

*Harlan L. Heward,* of Reno, for the State Bar of
Nevada.

**OPINION**

By the Court, TABER, J.:

Prior to the summer of 1942, attorneys from other
states, under certain conditions and upon compliance
with certain requirements, could be and frequently were
granted licenses to practice law in all the courts of this
state, on motion, without taking the regular bar exam-
ination. By amendment of supreme court rule I,
adopted June 3, published June 19, and effective July

19, 1942, every applicant for a license to practice as an attorney and counsellor in Nevada must take the regular bar examination held once each year, commencing on the second Monday of September.

In this proceeding petitioner prays the court for an order admitting him to the practice of law in all the courts of this state. The state bar of Nevada has demurred to the petition upon the ground that it does not state facts sufficient to warrant the granting of any relief. A summary of the pertinent allegations of the petition will be found in the following nine paragraphs:

(1) Petitioner, after acquainting himself with the provisions of the rule as it read prior to said amendment, wrote a letter on March 5, 1942, at Las Vegas, the city of his residence, addressed to the secretary of the state bar, at Reno, requesting him to send petitioner "application for admission to practice law in the State of Nevada on motion from a reciprocal state not requiring an examination." On March 18 the secretary acknowledged receipt of said letter and requested petitioner to give him, by return mail, certain desired information about his residence, upon receipt of which the secretary would comply with the request made in said letter of March 5. In the secretary's letter he enclosed a copy of supreme court rule I, and directed petitioner's attention to subdivision 7 thereof governing qualifications to be admitted on motion. On March 19, and before petitioner had received the secretary's letter of March 18, petitioner wrote a second letter addressed to the state bar of Nevada, at Reno, in which he said he had just learned that the secretary had been ill, and that petitioner would appreciate it if the office of the state bar would cause to be sent him the application form mentioned in his first letter to the secretary. After receiving the secretary's letter of March 18 petitioner, on March 20, wrote him, giving the desired information regarding his residence in Nevada. In this letter he

further stated that he would endeavor to qualify from the State of Washington, "which is entirely reciprocal." On April 15 petitioner "rather belatedly" acknowledged receipt of a letter from the secretary enclosing a preliminary form of application for admission to practice. In this letter petitioner stated that he had directed letters to the State of Washington for the necessary certificates and letters which were to accompany his application, and that same should be forthcoming within two weeks thereafter.

(2) On June 8 petitioner again wrote the secretary, stating that his six months' residence in Nevada had been completed on March 31, and that he now had on hand the requisite evidence of his prior status from the State of Washington and was ready to file his application. In this letter he inquired with respect to his status under the recent amendment of supreme court rule I, and added that it had occurred to him "that some provision in the amendment or practice might have left admission on motion available to any who had commenced residence and work looking toward such admission, and who, perhaps, like I, had completed residence and the accumulation of the required evidence, prior to or just at a time coincident with the change." On June 10 the secretary replied to said letter as follows: "Kindly be advised that the amendment to Rule I of the Rules of the Supreme Court governing admissions of attorneys from other jurisdictions has been amended and will go into effect thirty days after publication. Publication of the rule will be made in the State Bar Journal and should come out within the next ten days. Therefore you will be required, when the time comes, to take the regular Bar examination."

(3) On July 29, two days within the time limited by the rule, petitioner mailed his application to take the bar examination. Receipt of same, in the absence of the secretary, was acknowledged on July 31 by his secretary who, in her letter of acknowledgment, advised

petitioner that she had taken the matter up with the president of the state bar, who told her that petitioner's application was not in the correct form, and instructed her to send him four copies of application, together with questionnaire, all of which she was enclosing with the request that petitioner complete and return them at once. This he did, about ten days thereafter.

(4) On August 22 the secretary of the board of bar examiners wrote petitioner, requesting certain additional information in connection with his application. Petitioner replied by letter of August 25, giving such information. On August 24 the secretary of the board of bar examiners wrote the following letter to petitioner: "At the meeting of the State Board of Bar Examiners on August 22nd your Application was considered, but we are unable to pass upon your examination by reason of the fact that we did not receive your character questionnaire until August 17th. It is exceedingly unlikely that you will be allowed to take the Bar Examination this year as we have not the time within which to obtain a complete report on you. The examinations will be given September 14, 1942, and if, within a reasonable time prior thereto, your character reports are completed you will be allowed to take the examination, otherwise not. I will advise you immediately if the Board desires to allow you to take the examination this year."

(5) On September 5 the secretary of the board of bar examiners wrote petitioner the following letter: "On August 22nd I wrote you requesting information as to your whereabouts since December, 1940, in order to complete the investigation of your affidavit and questionnaire. Will you please send me the information immediately. Although your application cannot be considered by reason of the fact that we have not completed a character report, I will allow you to take the examination beginning September 14th, 1942, in Reno if you will sign the enclosed personal request under the conditions stated therein." On September 7 petitioner replied

to said letter as follows: "On receipt of your letter of August 22, 1942, I immediately wrote you a full page letter giving complete information requested. I directed it to you at the address indicated, P. O. Box 2046, Reno, Nevada; its date was August 25, 1942. Frankly, I am past the stage of being perplexed. I have done everything the rules seemed to require and with just as much expedition as time and circumstances would permit. I was definitely of the opinion that under the rules as they existed I was entitled to have had my application for admission on motion considered but was willing to pass that one at the time; then after spending almost a full year being advised that I could not even take the examination and now I can take it with strings attached—its just too much. I should appreciate a definite statement from some one in authority on the question of whether or not at the time Shindler advised me I could not be admitted on motion, that advice was correct or incorrect. If it was correct, please just send me back my $65.00 and the credentials which I forwarded and I will go on from there."

(6) On September 24, the secretary of the board of bar examiners wrote petitioner: "On September 10th I submitted the question of the filing of your application to the Board of Governors of the State Bar of Nevada, advising them that the Board of Bar Examiners could not consider your application because of the date of its filing, but that the Board of Bar Examiners would abide by the decision of the Governors, if directed to consider the application filed as of any particular date within the time allowed by the rules of the Supreme Court. I was advised today by letter from the President of the State Bar of Nevada that the Board of Governors met and concluded that as no application had as yet been filed to be admitted on motion, and as the authority of the Board of Governors is limited under the State Bar Act [Comp. Laws, sec. 540 et seq.], that the Board of Governors had nothing before it, and if such an application should be filed for admission on motion, the Board resolved that

it had no jurisdiction to direct the Board of Bar Examiners to consider it. I regret this inadvertent upset involving your application, but I want you to know that the Board of Bar Examiners has been without fault in the matter, and we are bound by the rules which guide us in these questions."

(7) Had it not been for the advice given him by the secretary of the state bar, petitioner would have filed his application to be admitted on motion immediately after procuring his documentary evidence. When petitioner filed his application to take the bar examination, it was accompanied with documentary evidence certifying to his qualifications and practice from the State of Washington where he last practiced; said documentary evidence is still on file with the state bar.

(8) From the time the secretary advised petitioner that he would have to take the regular bar examination, until the amended rule requiring all applicants to take such an examination became effective, the state bar "actually received, considered, and recommended admission on a number of applicants in precisely the same status as petitioner, and did not require such applicants to take the regular bar examination." Not only the president but also the vice president of the state bar, who was likewise a member of the board of governors, informed petitioner, after July 19, that they did not feel the state bar or its board of governors had any jurisdiction to act on an application by petitioner to be admitted on motion, made after that date.

(9) Upon receipt of the secretary's said letter of August 24, petitioner contacted the state bar and learned for the first time that he had been misinformed by the secretary in the latter's said letter of June 10. In view of the misinformation given petitioner in said letter of June 10 the state bar, in good conscience, should have advised petitioner promptly that applications for admission on motion could be filed up to the time when the rule requiring all applicants to take the

bar examination would become effective. In withholding such information, the state bar did not act in good faith, and petitioner has thereby been unjustly and unfairly dealt with and discriminated against, all to his serious detriment, financially and otherwise (setting forth particulars). By reason of the advice given petitioner in said letter of September 24 and the statements made to him by said officers of the state bar, petitioner is aggrieved by the action of that body, and is without adequate remedy and recourse.

The state bar does not question the jurisdiction of this court to entertain the petition. The only question to be determined is whether, by reason of the secretary's letter of June 10, petitioner's reliance thereon, and the failure of the state bar to advise petitioner within a reasonable time before July 19 that he could at any time before that date file his application for admission on motion, he is entitled to be admitted to practice without taking the regular bar examination.

In advising petitioner, by said letter of June 10, that he would be required to take the regular bar examination, the secretary was in error. Petitioner could have lawfully filed his application for admission on motion at any time from March 30 to July 18. But the secretary's mistake was not made within the scope of his authority. He is not required to be a member of the board of governors and the petition does not allege that he is a member of that body. It was not his duty, nor was he authorized, to advise petitioner that he would be required to take the bar examination. It appears that petitioner himself was at least in doubt as to the secretary's authority, for on September 7, as we have seen, in a letter to the secretary of the board of bar examiners, he said he would appreciate a definite statement from *some one in authority* on the question of whether or not, at the time he was advised that he could not be admitted on motion, that advice was correct or incorrect.

The secretary's letter of June 10 does not say that he had taken up the matter of petitioner's inquiry with the board of governors. Neither the board of governors, the board of bar examiners, nor any member of either of those boards advised petitioner, before July 19, that he would be required to take the bar examination. The advice given him by the president and vice president of the state bar was given after that date.

There was a period of more than three and one-half months during which petitioner could have filed his application to be admitted on motion. Instead of doing so, he accepted without question the opinion of the secretary of the state bar. He did not check up on this opinion till after the amendment to supreme court rule I had gone into effect. He did not so much as make an effort to secure a copy of the amended rule which, as he was advised by said letter of June 10, would not be in effect for some forty days thereafter. Petitioner, though not as yet admitted to practice in this state, has been an attorney for years. He was fully acquainted with the provisions of supreme court rule I since a time many months prior to the amendment requiring all applicants to take the regular bar examination. He should have known that he was not entitled to rely implicitly upon the opinion of the secretary of the state bar as to whether he could at any time between March 29 and July 19 file his application to be admitted on motion. He should have filed his application before the new amendment became effective, as was done in Brydon-jack v. State Bar of California, 208 Cal. 439, 281 P. 1018, 66 A. L. R. 1507. If the secretary had refused to file the application, or if, after filing same, the board had declined to consider it, then petitioner would have been in a position to come direct to this court for relief.

Petitioner alleges that even if at the time he was advised that he would have to take the regular bar examination such was the opinion or rule of the board of governors, that board, when such opinion or rule was

changed so as to permit the filing of applications for admission on motion prior to the effective date of the newly amended rule of court, should in good conscience have informed him that at any time before July 19 he could file his application to be admitted on motion. But there is no allegation in the petition that it ever was the opinion of the board of governors or the board of bar examiners, or of any member or members of either of said boards, that petitioner could not lawfully file such application at any time before said date. And it does not appear that either of said boards, or any member or members thereof, knew at any time before July 19 that the secretary of the state bar had advised petitioner that he would have to take the bar examination. Under some circumstances a principal is presumed to have knowledge of declarations made by his agent. But here it does not appear, nor will it be presumed, that the secretary, in giving said opinion in his letter of June 10, was acting within the scope of either an actual or apparent authority conferred upon him.

Demurrer sustained.